UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN P. WILLIAMS and
JAY HOWARD

      Plaintiffs,

v.

DEARBORN MOTORS 1, LLC,
d/b/a ALL PRO NISSAN OF DEARBORN,

      Defendant.
_____/

Case No. 17-12724

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CLASS CLAIMS AND TO COMPEL ARBITRATION
OF PLAINTIFF HOWARD'S INDIVIDUAL CLAIMS [9]**

Plaintiffs are former employees of Defendant seeking to represent a class of Defendant's employees and former employees who were required to sign an arbitration agreement as a condition of employment or continued employment with Defendant. Plaintiffs' class claims allege that the arbitration agreement contains provisions that violate federal law and render the arbitration agreement unenforceable. The named Plaintiffs also allege individual claims of retaliation and discrimination in violation of several statutes, as detailed below.

Currently before the Court is Defendant's motion to dismiss Plaintiffs' class claims and compel arbitration of named Plaintiff Jay Howard's individual claims. (Dkt. # 9). For the reasons stated below, this Court GRANTS Defendant's motion.

**I.    FACTS**

Defendant Dearborn Motors 1, LLC, d/b/a All Pro Nissan of Dearborn is a car

dealership located in Dearborn, Michigan. According to the First Amended Complaint, named Plaintiff Brian P. Williams began working for Defendant as a porter in May 2015. Named Plaintiff Jay Howard began working for Defendant as a mechanic in June 2015. In December 2015, Defendant advised Williams, Howard, and all other employees that they were required to sign an arbitration agreement in order to remain employed. After returning from sick leave for neuropathy, epilepsy, sickle cell disease, and depression, Williams refused to sign the arbitration agreement, and Defendant terminated his employment in January 2016 as a result. Howard, on the other hand, did sign the arbitration agreement in order to keep his job.

In January 2016, Williams filed charges of discrimination with the EEOC alleging that Defendant fired him for failing to sign the arbitration agreement, which he believed denied him access to his legal rights under Title VII, the Americans with Disabilities Act ("ADA"), the Equal Pay Act, the Age Discrimination in Employment Act ("ADEA"), and the Genetic Information Non-Disclosure Act. (Dkt. # 3-3). Williams also alleged that Defendant denied him the position of Oil Technician because of his disability and race, and that Defendant paid him and other African American workers less wages because of their race. *Id.* In October 2016, the EEOC determined that there was reasonable cause to believe that Defendant violated Title VII, the ADA, the Equal Pay Act, the ADEA, and the Genetic Information Non-Disclosure Act. (Dkt. # 3-4). In January 2017, the State of Michigan denied Williams unemployment benefits because, according to Defendant, Williams had been fired for misconduct in violation of company policy. (Dkt. # 3-6). In March 2017, the EEOC issued Williams Notice of Right to Sue letters. (Dkt. # 3-7).

In January 2016, Howard complained to Defendant of race-based compensation

disparities. In February 2016, Howard filed a charge of discrimination with the EEOC alleging that he was subjected to less favorable conditions of employment, fewer wages, and harassment because of his race. (Dkt. # 3-8). Howard also alleged that Defendant retaliated after he complained of discrimination, and that he was forced to sign a waiver denying him access to legal rights under Title VII, the ADA, the Equal Pay Act, the ADEA, and the Genetic Information Non-Disclosure Act. In October 2016, the EEOC determined that there was reasonable cause to believe that Defendant violated Title VII, the ADA, the Equal Pay Act, the ADEA, and the Genetic Information Non-Disclosure Act. (Dkt. # 3-9). Defendant terminated Howard's employment in May 2017. Shortly thereafter, the EEOC issued Howard a Notice of Right to Sue letter. (Dkt. # 3-11). In August 2017, Howard filed another charge of discrimination with the EEOC alleging that, since filing his first charge, Defendant subjected him to retaliation. (Dkt. # 3-8).

Plaintiffs seek to represent a class of Defendant's employees and former employees who were required to sign an arbitration agreement as a condition of employment or continued employment with Defendant. According to Plaintiffs, through the arbitration agreement, Defendant sought to strip Plaintiffs of rights guaranteed under federal law by (1) forcing Plaintiffs to agree to submit any claims arising out of employment to exclusive and binding arbitration; (2) forcing Plaintiffs to waive any rights to trial by jury or to bring any claims in court; (3) forcing Plaintiffs to agree to only assert claims on an individual basis; (4) forcing Plaintiffs to agree to waive any rights to seek class or collective action treatment for any claims they may have; (5) forcing Plaintiffs to agree to waive any rights they may have to participate in any class or collective action against Defendant; (6) forcing Plaintiffs to agree to "opt out" of any proceeding in which Plaintiffs are made members or part of a

class; and (7) forcing Plaintiffs to agree to waiving any rights to any monetary recovery obtained by any third party on their behalf.  Plaintiffs bring class claims of discrimination in violation of Title VII (Count I), discrimination in violation of the ADA (Count II), and discrimination in violation of the ADEA (Count III).

In addition to the class claims of discrimination, Williams brings individual claims of retaliation in violation of Title VII (Count IV), retaliation in violation of the ADEA (Count V), and retaliation in violation of the ADA (Count VI).  Howard brings individual claims of retaliation in violation of Title VII (Count IV), race discrimination in violation of Michigan's Elliott-Larsen Civil rights Act ("ELCRA") (Count VII), and retaliation in violation of ELCRA (Count VIII).

Defendant moves to dismiss Plaintiffs' class claims and compel arbitration of Howard's individual claims.  Defendant requests that Howard's individual claims be dismissed, or alternatively, stayed.

The 2-page arbitration agreement at issue in this case is titled "Arbitration / Waiver of Class and Collective Actions / Attorney Fees and Costs" and consists of three paragraphs, A through C.  Paragraph A states:

> Any controversy, dispute, or claim arising out of employee's employment at the company, whether contractual, in tort, or based upon statute, shall be exclusively decided by binding arbitration held pursuant to the Federal Arbitration Act . . . The arbitrator shall have exclusive authority to resolve any and all disputes over the validity of any part of this lease . . . .

(Dkt. # 3-1).  Paragraph B addresses costs and attorneys fees.  Paragraph C states:

> Employee agrees that all claims or disputes between employee and the company . . . will be litigated individually; that he/she will not consolidate his/her claims with the claims of any other individual; that he/she will not seek class or collective action treatment for any claim that he/she may have; and that he/she will not participate in any class or collective action treatment

4

against the company . . . . If at any time the employee is made a member or [sic] a class in any proceeding, he/she will "opt out" at the first opportunity, and should any third party pursue any claims on his/her behalf, the employee shall waive his/her rights to any such monetary recovery.

*Id.*

## II. APPLICABLE LAW

The Federal Arbitration Act ("FAA") was enacted with the purpose of reversing longstanding judicial hostility to arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). It manifests a liberal federal policy favoring arbitration agreements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). Section 2 of the FAA provides that written arbitration agreements involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words, the FAA ensures that arbitration agreements are as enforceable as any other contract, but it does not make arbitration agreements more enforceable than other contracts. *Nat'l Labor Relations Bd. v. Alternative Entm't, Inc.*, 858 F.3d 393, 401 (6th Cir. 2017). "Th[e] saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

When a party files a motion invoking an arbitration agreement, the court must follow the procedure set forth in Sections 3 and 4 of the FAA. If a court determines that the cause

5

of action is referable to arbitration, it must on application of one of the parties stay the proceedings until arbitration has been had.  9 U.S.C. § 3.  "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

As the Sixth Circuit has explained, a court should conduct a four-step analysis of the arbitration agreement:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003).

## III.  ANALYSIS

Defendant moves to dismiss Plaintiffs' class claims and compel arbitration of Howard's individual claims.  Plaintiffs do not challenge Defendant's arguments that Howard agreed to submit claims arising from his employment to arbitration, that Howard's individual claims are within the scope of the arbitration agreement with Defendant; and that Congress did not intend those statutory employment discrimination claims to be nonarbitrable.  Instead, Plaintiffs respond that Defendant's arbitration agreement is illegal and unenforceable for two reasons:  (1) because it thwarts Plaintiffs' rights under the National Labor Relations Act ("NLRA") to pursue a class action either in a judicial forum or in arbitration; and (2) because

it requires employees to waive any right to participate in any proceeding commenced by a third party, including the EEOC, thereby interfering with the EEOC's enforcement powers.

### A. Delegation Provision

In its reply, Defendant presents a one-paragraph argument that the enforceability of the class waiver provision is for the arbitrator, not the Court, to decide pursuant to the delegation provision in the arbitration agreement. The provision Defendant refers to is contained in Paragraph A of the arbitration agreement and provides that "[t]he arbitrator shall have exclusive authority to resolve any and all disputes over the validity of any part of this lease."

Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). The question of whether the parties have submitted a particular dispute to arbitration is one for the court "unless the parties clearly and unmistakably provide otherwise." *Id.* (internal quotation marks and citations omitted).

The provision that Defendant relies on does not clearly or unmistakably indicate that the parties agreed to arbitrate the question of the enforceability of the class waiver provision. The provision at issue does not refer to the validity of the arbitration agreement. Rather, it refers to the validity of a "lease." The ordinary meaning of a "lease" is a contract for land, property, or services for a specified time, usually in return for periodic payment, and it does not ordinarily encompass an arbitration agreement.

7

Defendant relies exclusively on *Rent-A-Center v. Jackson*, 561 U.S. 63 (2010).  That case is distinguishable because the delegation provision at issue in *Rent-A-Center* was clearer and broader than the one at issue in this case.  *See id.* at 66 (delegation provision providing that the arbitrator, and not any court, "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any party of this Agreement is void or voidable").

The Court concludes that question of the enforceability of the class waiver provision in this case is for the Court, not the arbitrator, to decide.

**B.    Whether the Class Action Waiver is Enforceable**

Defendant argues that Plaintiffs' class claims should be dismissed because Plaintiffs' contention that the class action waiver contained in the arbitration agreement subjects employees to an unlawful employment practice by limiting access to legal rights fails to raise a cognizable claim.  Defendant notes that courts have enforced class waivers in many contexts, including in an employment discrimination claim under the ADEA.

Relying primarily on *Nat'l Labor Relations Bd. v. Alternative Entm't, Inc.*, 858 F.3d 393 (6th Cir. 2017), *abrogated by Epic Sys. Corp. v. Lewis*, No. 16-285, 2018 WL 2292444 (U.S. May 21, 2018), Plaintiffs respond that the class waiver provision violates federal law and renders the arbitration agreement unenforceable under the FAA.  Plaintiffs argue that, therefore, Howard and the Plaintiff class can pursue their claims in court.

In *Alternative Entertainment*, the National Labor Relations Board ("NLRB") sought enforcement of its administrative order finding that the employer had violated the NLRA by requiring its employees to agree to arbitrate all claims concerning or arising out of their employment individually. *Id.* at 396. The Sixth Circuit identified the issue as "[w]hether federal law permits employers to require individual arbitration of employees' employment-related claims," and noted a circuit split. *Id.* at 401-02. The Ninth and Seventh Circuits had already concluded that arbitration provisions mandating individual arbitration of employment-related claims violate the NLRA. *See Morris v. Ernst & Young, LLP*, 834 F.3d 975, 979 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809, 196 L. Ed. 2d 595 (2017), *and rev'd sub nom. Epic Sys. Corp. v. Lewis*, No. 16-285, 2018 WL 2292444 (U.S. May 21, 2018); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1151 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809, 196 L. Ed. 2d 595 (2017), *and rev'd*, No. 16-285, 2018 WL 2292444 (U.S. May 21, 2018). The Fifth and Eight Circuits had already reached the opposite conclusion that such provisions do not violate the NLRA and are enforceable under the FAA. *See Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013, 1015 (5th Cir. 2015), *aff'd sub nom. Epic Sys. Corp. v. Lewis*, No. 16-285, 2018 WL 2292444 (U.S. May 21, 2018); *Cellular Sales of Missouri, LLC v. Nat'l Labor Relations Bd.*, 824 F.3d 772, 776 (8th Cir. 2016). The Sixth Circuit "join[ed] the Seventh and Ninth Circuits in holding that an arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable." *Alternative Entertainment*, 858 F.3d at 408.

The Sixth Circuit found that the NLRA prohibits mandatory arbitration provisions barring collective or class action suits because they interfere with employees' right to

engage in concerted legal activity, not because they mandate arbitration. 858 F.3d at 405. Therefore, it held that such provisions are unenforceable pursuant to the FAA's saving clause. The court explained that the core, substantive right that Section 7 of the NLRA protects is the right of employees to engage in concerted activities for mutual aid or protection, which includes resort to administrative and judicial forums. *Id.* at 402. The Sixth Circuit found no conflict between the FAA's policy in favor of enforcing arbitration agreements and workers' right under the NLRA to act in concert. *Id.* Rather, according to the Sixth Circuit, the FAA and NLRA work in harmony: "The NLRA prohibits the arbitration provision on grounds that would apply to any contractual provision, and thus triggers the FAA's saving clause." *Id.*

On May 21, 2018, however, the Supreme Court reversed the Seventh and Ninth Circuits, also abrogating the Sixth Circuit's *Alternative Entertainment* decision. *See Epic Sys. Corp. v. Lewis*, No. 16-285, 2018 WL 2292444, at *17 (U.S. May 21, 2018). The Court noted that the FAA requires courts to rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate and the rules under which the arbitration will be conducted. *Id.* at *5 (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)). As in the instant case, the employee plaintiffs in *Epic Systems* argued that the FAA saving clause applied because the NLRA rendered the class and collective action waivers illegal. The Court found that the FAA saving clause could not save the employees' cause. Although illegality, like unconscionability, may be a traditional, generally applicable contract defense in many cases, the Court found that "an argument that a contract is unenforceable just because it

10

requires bilateral arbitration is a different creature." *Id.* at *8. The Court further explained that the employees in *Epic Systems* objected to their agreements "precisely because they require individualized arbitration proceedings instead of class or collective ones. And by attacking (only) the individualized nature of the arbitration proceedings, the employees' argument seeks to interfere with one of arbitration's fundamental attributes." *Id.* at *7 ("*Concepcion*'s essential insight remains: courts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent.") (citing *Concepcion*, 563 U.S. at 344).

Additionally, the Court found that Congress did not manifest in the NLRA a clear intent to displace the FAA. The Court noted that the NLRA does not even mention class or collective action procedures. *Id.* at *9. The Court explained that "other concerted activities" in Section 7 of the NLRA "serve to protect things employees just do for themselves in the course of exercising their right to free association in the workplace, rather than the highly regulated, courtroom-bound activities of class and joint litigation." *Id.* (internal quotation marks and citation omitted). "Nothing in our cases indicates that the NLRA guarantees class and collective action procedures, let alone for claims arising under different statutes and despite the express (and entirely unmentioned) teachings of the Arbitration Act." *Id.* at *12.

Plaintiffs in this case, like the employees in *Epic Systems*, attack only the individualized nature of the arbitration proceedings that they agreed to. Thus, they too seek to interfere with a fundamental attribute of arbitration. As was the case in *Epic Systems*, illegality in this case is not a generally applicable contract defense. Instead, it is

11

an argument that a contract is unenforceable just because it requires bilateral arbitration, which is not permissible and inconsistent with the FAA and its saving clause.  In short, *Epic Systems* teaches that Congress has instructed in the FAA that courts must enforce arbitration agreements providing for individualized proceedings like the one at issue in this case, and neither the FAA's saving clause nor the NLRA suggests otherwise.  Accordingly, the class action waiver is enforceable in this case, and Plaintiffs' first argument must fail.

### C.  Whether the Opt-Out Provision is Enforceable

Plaintiffs' second argument is that the arbitration agreement is illegal and unenforceable because the opt-out provision violates Title VII, the ADA, and the ADEA.  As noted above, the mandatory opt-out provision at issue is found in Paragraph C of the arbitration agreement and provides:  "If at any time the employee is made a member or [sic] a class in any proceeding, he/she will 'opt out' at the first opportunity, and should any third party pursue any claims on his/her behalf, the employee shall waive his/her rights to any such monetary recovery."  (Dkt. # 3-1).

According to Plaintiffs, the mandatory opt-out provision in Defendant's arbitration agreement severely impedes the EEOC's enforcement powers under the aforementioned statutes by depriving the EEOC of its ability to seek class-wide relief on behalf of the aggrieved individuals.  Plaintiffs further argue that the opt-out provision deprives employees of their ability to seek redress under the statutes because, once the EEOC exercises its right to sue, an individual employee no longer has a private cause of action.  Plaintiffs note that, once an individual employee files a charge with the EEOC, the employee may not withdraw that charge.   Plaintiffs argue that the interest in protecting the EEOC's

enforcement powers should outweigh the interest in enforcing Plaintiffs' private promises to opt out of any class in any proceeding. Defendant replies that Plaintiffs do not have standing to make this argument.

Article III of the United States Constitution limits the federal courts' jurisdiction to cases and controversies. U.S. Const. art. III, § 2. "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). In *Lujan v. Defenders of Wildlife*, the Supreme Court set forth three elements to establish constitutional standing: (1) that the plaintiff suffered an injury in fact; (2) that the injury is caused by the defendant's conduct, and is not the result of the independent action of some third party not before the court; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. 504 U.S. 555, 560-61 (1992).

"To establish an injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotations marks and citations omitted). "A concrete injury must be *de facto*; that is, it must actually exist." *Id.* (internal quotation marks and citations omitted). In *Spokeo*, the Supreme Court made clear that a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Id.* at 1549. Because Article III standing requires a concrete injury even in the context of a statutory violation, a plaintiff cannot allege a bare

13

procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement. *Id.*

The Court agrees with Defendant that Plaintiffs do not have standing to argue that the opt-out provision in the arbitration agreement violates Title VII, the ADA, and the ADEA. Plaintiffs in this case were not prevented from filing, and did in fact file, discrimination and retaliation charges with the EEOC. Plaintiffs also participated in the EEOC's investigation. The EEOC then elected not to pursue individual or class actions on Plaintiffs' behalf. Under these facts, Plaintiffs cannot show that they have actually suffered a concrete injury. Further, the Supreme Court has recognized that an arbitration agreement between private parties does not bind the EEOC and does not prevent the EEOC from bringing actions seeking class-wide relief. *See Gilmer*, 500 U.S. at 32. The Court has also noted that the EEOC has independent authority to investigate discrimination, and that nothing in the ADEA indicates that Congress intended that the EEOC be involved in *all* employment disputes. *Id.* at 28. Even assuming that the opt-out provision in Defendant's arbitration agreement violates Title VII's, the ADA's, and the ADEA's procedural requirements, Plaintiffs have not shown that the violation resulted in concrete harm or entails a degree of risk sufficient to meet the concreteness requirement. The Court concludes that the named Plaintiffs lack standing to challenge the opt-out provision. Accordingly, they may not seek relief on behalf of themselves or any class. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Accordingly, Plaintiffs' second argument fails as well. The Court will grant Defendant's motion to dismiss Plaintiffs' class claims.

**D. Plaintiffs' Request for Judgement on the Pleadings**

In their response, Plaintiffs argue that Plaintiff Williams is entitled to judgment on the pleadings because Defendant admitted in its Answer that it fired Williams for not signing the arbitration agreement. *See* Dkt. # 8, Pg ID 137.

Defendant replies that it did not admit to retaliation as claimed by Williams, and that Williams should file a motion demonstrating the factual and legal bases for his conclusion. Defendant argues that numerous questions of fact exist regarding the essential elements of a retaliation claim, and that Defendant should not be compelled to respond to a Rule 12(c) motion within the confines of a reply brief in which other legal issues are the controlling focus.

The Court agrees with Defendant and notes that a party may not make a motion within its response. *See* E.D. Mich. Electronic Filing Policies and Procedures R 5(f).

**IV. CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS Defendant's Motion to Dismiss Plaintiffs' Class Claims and to Compel Arbitration of Plaintiff Howard's Individual Claims (Dkt. # 9). The Court will enforce the arbitration agreement in this case. Accordingly, Plaintiff Howard shall arbitrate his claims individually in accordance with the terms of the arbitration agreement, and his individual claims are hereby STAYED pending arbitration, pursuant to Section 3 of the FAA. Plaintiff William did not sign an arbitration agreement, and his individual claims may proceed in this judicial forum.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 24, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 24, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager