UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN P. WILLIAMS and
JAY HOWARD,

       Plaintiffs,

v.

DEARBORN MOTORS 1, LLC,
d/b/a ALL PRO NISSAN OF DEARBORN,

       Defendant.
_____/

Case No. 17-12724

Honorable Nancy G. Edmunds

## ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION [16]

**I.   BACKGROUND**

On May 24, 2018, the Court entered an Order Granting Defendant's Motion to Dismiss Plaintiffs' Class Claims and to Compel Arbitration of Plaintiff Howard's Individual Claims. (Dkt. # 14). This matter is now before the Court on Plaintiffs' motion for reconsideration filed on June 7, 2018. (Dkt. # 16). Defendant filed a response on June 20, 2018. (Dkt. # 20). The Court heard oral argument on August 8, 2018. For the reasons set forth below, the Court DENIES Plaintiffs' motion.

**II.   STANDARD OF REVIEW**

Pursuant to Rule 7.1(h) of the Local Rules for the Eastern District of Michigan, a party may file a motion for reconsideration within fourteen days after a court issues an order to which the party objects. Although a court has the discretion to grant such a motion, it generally will not grant a motion for reconsideration that "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. R.

7.1(h). To persuade the court to grant the motion, the movant "must not only demonstrate a palpable defect by which the court and the parties . . . have been misled but also show that correcting the defect will result in a different disposition of the case." *Id.*

## III. ANALYSIS

At the outset, the Court agrees with Defendant that Plaintiffs base their motion for reconsideration in large part on new legal arguments that were available at the time they responded to Defendant's motion to dismiss Plaintiffs' class claims and to compel arbitration of Plaintiff Jay Howard's individual claims. A motion for reconsideration is not a vehicle to proffer new arguments that the movant could have brought up earlier. *Sault Ste. Marie Tribe v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Additionally, Plaintiffs have not demonstrated a palpable defect by which the Court or the parties have been mislead. That said, there have been recent developments in this area of the law, and the Court did not hear oral argument from the parties before issuing its May 24, 2018 Order. Accordingly, the Court requested further briefing and heard oral argument on Plaintiffs' motion for reconsideration, and the Court will address Plaintiffs' new arguments below.

### A. *Epic Systems* Is Not Limited to Wage and Overtime Claims Under the FLSA

After heavily relying on *Nat'l Labor Relations Bd. v. Alternative Entm't, Inc.*, 858 F.3d 393 (6th Cir. 2017) in response to Defendant's motion to dismiss and to compel arbitration, Plaintiffs now maintain that the Supreme Court's recent decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), which abrogates *Alternative Entertainment*, does not pertain to Plaintiffs' pattern-or-practice claims under Title VII, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). Defendant correctly notes that it was Plaintiffs who vigorously argued that Defendant's arbitration agreement

2

was illegal because it violated the National Labor Relations Act ("NLRA") and was unenforceable pursuant to the Federal Arbitration Act's ("FAA") saving clause, and that *Alternative Entertainment* was controlling. *See* Dkt. # 11. Nevertheless, Plaintiffs now argue that *Epic Systems* is limited to wage and overtime claims under the Fair Labor Standards Act ("FLSA").

Plaintiffs correctly note that the employees in *Epic Systems* brought claims under the FLSA and related state law claims, and the Court held that employees can waive their ability to pursue class or collective actions with regard to such claims; however, the *Epic Systems* decision is not strictly limited to claims under the FLSA. Although Plaintiffs quote the dissenting opinion at length,[1] the majority opinion framed the issue broadly as: "Should employees and employers be allowed to agree that any disputes between them will be resolved through one-on-one arbitration? Or should employees always be permitted to bring their claims in class or collective actions, no matter what they agreed with their employers?" The Court determined that, although as a matter of policy these questions are debatable, "as a matter of law the answer is clear. In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Systems*, 138 S. Ct. at 1619.

---

[1] *See Epic Systems*, 138 S. Ct. at 1648 (Ginsburg, J., dissenting) (noting that she does not read the majority opinion "to place in jeopardy discrimination complaints asserting disparate-impact and pattern-or-practice claims that call for proof on a group-wide basis," and that it would be "grossly exorbitant" to read the FAA to devastate federal laws enacted to eliminate class-based employment discrimination).

As the Court stressed in its May 24, 2018 Order, Plaintiffs in this case challenge the arbitration agreement precisely because it requires individual arbitration, yet Supreme Court precedent teaches that such an argument impermissibly disfavors arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Epic Systems*, 138 S. Ct. at 1623. The Supreme Court has stressed that an overarching purpose of the FAA "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration . . . ." *Concepcion*, 563 U.S. at 344. By attacking only the individualized nature of the arbitration proceedings they agreed to, Plaintiffs seek to interfere with one of arbitration's fundamental attributes. *See Epic Systems*, 138 S. Ct. at 1622.

**B. There Is No Substantive Statutory Right to Bring a "Pattern-or-Practice Class Claim"**

Plaintiffs now argue that the Court cannot compel individual arbitration of their "pattern-or-practice class claims under Title VII, ADA, and ADEA" because that would limit their rights under the Acts. Defendant responds that Plaintiffs erroneously identify this case as a pattern-or-practice class action. Defendant further argues that "pattern-or-practice" refers to a method of proving discrimination which affords no substantive right, and not to a freestanding cause of action.

The method of proof described in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) is known as the "pattern-or-practice" method of proving discrimination. This method of proof is only available to the government and to class-action plaintiffs. *See Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) (holding that the

4

pattern-or-practice method is not available to individual plaintiffs, but noting that pattern-or-practice evidence may nevertheless be relevant to proving an otherwise-viable individual claim under the *McDonnell Douglas* framework). To establish an employer's liability for discrimination, a private plaintiff must ordinarily show that an employer took an adverse action against him because of his protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In contrast, in a "pattern-or-practice" case, the government or class-action plaintiffs need not establish all of the traditional elements of a *prima facie* case of discrimination. *Serrano v. Cintas Corp.*, 699 F.3d 884, 898 (6th Cir. 2012). Establishing the existence of a discriminatory policy, or that unlawful discrimination is an employer's standard operating procedure (more than sporadic discriminatory acts), justifies an award of prospective relief. *Teamsters*, 431 U.S. at 361. Government or class-action plaintiffs proceeding under a pattern-or-practice theory need not demonstrate specific losses to specific plaintiffs in order to establish that injunctive relief is appropriate. *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 147 (2d Cir. 2012). However, such proof does not relieve the government or class-action plaintiffs of the need to offer additional proof in order to determine the scope of any individual relief. *See Teamsters*, 431 U.S. at 361. Importantly, the pattern-or-practice framework "is not an inherently easier standard of proof; it is simply a different standard of proof. Indeed, under *Teamsters*, the plaintiff's initial burden . . . is heightened." *Serrano*, 699 F.3d at 896.

At paragraph 54 of the First Amended Complaint, Plaintiffs allege that the arbitration agreement at issue constitutes a "pattern and practice, and/or, policy" which "explicitly denies Plaintiff Class access to legal rights otherwise afforded under Federal Law." (Dkt. # 3, Pg ID 64). This is the only reference to "pattern and practice" in the complaint.

Plaintiffs define the purported class as: "All employees of Defendant who were required to sign Defendant's 'Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Costs' . . . as a condition of employment or continued employment with Defendant since December of 2015." *Id.* at Pg ID 63-64. The complaint alleges that the arbitration agreement is unenforceable because (1) it contains a class-action waiver that limits Plaintiffs' access to legal rights guaranteed under Title VII, the ADA and the ADEA; and (2) it interferes with the Equal Employment Opportunity Commission's ("EEOC") enforcement powers. However, Plaintiffs do not allege that Defendant required only minority, disabled, and/or older workers to sign the arbitration agreement, or that the arbitration agreement discriminates on the basis of any protected class. Instead, Plaintiffs allege that Defendant required all of its employees to sign the arbitration agreement, and that the arbitration agreement denies all employees of Defendant who were required to sign it access to legal rights. *Id.* at Pg ID 54, 56, 58. The complaint contains no mention of "disparate impact," and there are only two mentions of disparate treatment. *Id.* at Pg ID 67, 75 (referencing "differential pay practices based on race, African American"). The Court agrees with Defendant that Plaintiffs have not clearly alleged a pattern-or-practice theory of the case. *But see Serrano*, 699 F.3d at 898 (noting that the complaint was sparse and not a model of good lawyering, but concluding that the EEOC was under no obligation to plead its intent to utilize the pattern-or-practice method of proof; it was only required to set forth sufficient facts in its complaint upon which its claim for relief under Title VII was plausible).

In any event, regardless of clarity or lack thereof, Plaintiffs' argument that the Court cannot compel individual arbitration of their "pattern-or-practice class claims under Title VII, ADA, and ADEA" because that would limit their rights under the Acts must fail because

6

"pattern-or-practice" refers to a judicially-crafted method of proof and not a freestanding cause of action. Simply put, Plaintiffs have no substantive statutory right to bring a "pattern-or-practice class claim." *See Serrano*, 699 F.3d at 898 (citing *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 183 (3rd Cir.2009)) ("*Teamsters* provides an evidentiary framework pursuant to which the EEOC may seek to prove its allegations of intentional discrimination, not an independent cause of action."); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("A pattern or practice case is not a separate and free-standing cause of action . . . but is really 'merely another method by which disparate treatment can be shown.'"); *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013) ("Parisi contends . . . that individual arbitration would preclude her from vindicating her right to bring a substantive 'pattern-or-practice' claim under Title VII. But such a right does not exist. . . . '[P]attern-or-practice' simply refers to a method of proof and does not constitute a 'freestanding cause of action.'").

**C. There Is No Contrary Congressional Command in Title VII, the ADA, or the ADEA that Overrides the FAA's Mandate**

The FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Systems*, 138 S. Ct. at 1621 (internal quotation marks and citations omitted). In case after case, the Supreme Court has made clear that courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate and the rules under which the parties choose to arbitrate. *Concepcion*, 563 U.S. at 344; *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Epic Systems*, 138 S. Ct. at 1621. "That holds true for claims that allege a violation of a federal

7

statute, unless the FAA's mandate has been overridden by a contrary congressional command." *Italian Colors*, 570 U.S. at 233 (internal quotation marks and citations omitted). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). "[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent functions." *Id.* at 637.

Plaintiffs in this case have not produced any contrary congressional in Title VII, the ADA, or the ADEA that has overridden the FAA's mandate. Plaintiffs have not cited any case holding that class-action waivers are illegal under Title VII, the ADA, or the ADEA. Notably, Plaintiffs have failed to address *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) in their motion for reconsideration. In *Gilmer*, the Supreme Court noted that nothing in the text of the ADEA or its legislative history precludes arbitration. The Court "had no qualms in enforcing a class waiver in an arbitration agreement" even if class action relief could not be granted by an arbitrator, and even though the ADEA expressly permitted collective actions. *Italian Colors*, 570 U.S. at 237 (discussing *Gilmer*, 500 U.S. at 32). The Court explained that statutory permission did not mean that individual attempts at conciliation were intended to be barred. *Gilmer*, 500 U.S. at 32. And in *Epic Systems*, the Court stressed that Congress has shown that it knows how to override the FAA when it wishes to do so. *See* 138 S. Ct. at 1626 (collecting statutes). There is no such language in Title VII, the ADA, or the ADEA. In *Epic Systems*, the Court went on to explain that, although the FLSA allows employees to sue on behalf of themselves and other employees

similarly situated, the FLSA's collective action scheme (which is identical to the one in the ADEA) does not displace the FAA or prohibit individualized arbitration proceedings. *Id.* (citing *Gilmer*, 500 U.S. at 32).

The same reasoning applies to Title VII and the ADA. *See Parisi*, 710 F.3d at 487 (Title VII claims "can be subject to mandatory arbitration. . . . Congress specifically approved arbitration of Title VII claims in the Civil Rights Act of 1991, expressly stating that the 'use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.'"); *Gaffers v. Kelly Servs., Inc.*, 203 F. Supp. 3d 829, 840-41 (E.D. Mich. 2016) (noting that rights under employment discrimination statutes such as the ADEA and Title VII can be waived); *Whitt v. Prosper Funding LLC*, No. 1:15-CV-136-GHW, 2015 WL 4254062, at *6 (S.D.N.Y. July 14, 2015) (quoting 42 U.S.C. § 12212, which states that arbitration is encourage to resolve disputes under the ADA). In short, although Title VII, the ADA, and the ADEA authorize class or collective actions as well as injunctive relief, the statutes allow parties to contract for individual bilateral arbitration because the statutes do not make collective or class action procedures mandatory. *See Epic Systems*, 138 S. Ct. at 1627, 1632; *Gilmer*, 500 U.S. at 32; *Parisi*, 710 F.3d at 487-88.

*Parisi* brings home the point. Notably, Plaintiffs also failed to address *Parisi* in their response to Defendant's motion to dismiss and compel arbitration, as well as in their motion for reconsideration, despite the fact that Defendant cited *Parisi* in its original motion and reply. In *Parisi*, three former female employees sued Goldman Sachs individually and on behalf of a putative class alleging that Goldman Sachs had engaged in a continuing pattern and practice of gender discrimination with respect to compensation, business allocation,

9

and promotions, in violation of Title VII. *Id.* at 485. Goldman Sachs moved to compel individual arbitration of Parisi's claims pursuant to an arbitration agreement that she had agreed to. *Id.* Similarly to Plaintiffs in the instant case, Parisi argued that she had not waived her substantive right to challenge systemic discrimination at Goldman Sachs. According to Parisi, because she could not pursue a pattern-or-practice claim individually or proceed on a class-wide basis in arbitration, she had to be permitted to proceed in court as a class plaintiff, and the arbitration agreement had to be invalidated because it would preclude her from vindicating her statutory right. *Id.* at 486. The Second Circuit disagreed and determined that a substantive right to pursue a pattern-or-practice claim does not exist. *Id.* at 487. The court noted that "[t]he availability of the class action Rule 23 mechanism *presupposes* the existence of a claim; Rule 23 cannot create a non-waivable, substantive right to bring such a claim." *Id.* at 488 (emphasis in original). The court further noted that the rules of the fora in which Parisi's claims were to be arbitrated afforded flexibility and informality to parties adducing relevant evidence. The court determined that, in proving her individual statutory claims, Parisi could offer to the arbitrators evidence of the alleged discriminatory patterns, practices, or policies that affected her. *Id.*

### D. The Arbitration Agreement Does Not Eliminate Plaintiffs' Right to Pursue Statutory Remedies

Plaintiffs next invoke a judge-made exception to the FAA, arguing that the arbitration agreement prevents the effective vindication of their statutory rights under Title VII, the ADA, and the ADEA. According to Plaintiffs, because these statutes allow employees to seek company-wide injunctive relief, and because such relief can only be readily obtained

10

in class actions, the arbitration agreement at issue in this case limits remedies available under federal law and is unenforceable.

In *Italian Colors*, the Supreme Court explained that the "effective vindication" exception to the FAA "finds its origins in the desire to prevent prospective waiver of a party's *right to pursue* statutory remedies." 570 U.S. at 236 (emphasis in original).

> That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. . . . The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before the adoption of the class action for legal relief in 1938. Or, to put it differently, the individual suit that was considered adequate to assure "effective vindication" of a federal right before adoption of class action procedures did not suddenly become "ineffective vindication" upon their adoption.

*Id.* at 236-37 (citations omitted).

Plaintiffs' argument must fail. In this case, the arbitration agreement specifically states that the arbitrator shall permit reasonable discovery and shall be permitted to award any relief that would be available in a court. (Dkt. # 3-1, Pg ID 81). Although the arbitration agreement includes a class-action waiver, it does not eliminate Plaintiffs' *right to pursue* their statutory remedies; it merely limits arbitration to the two contracting parties. *See Italian Colors*, 570 U.S. at 236-37. The arbitration agreement in this case does not interfere with the recovery of statutorily authorized damages. Plaintiffs may offer to the arbitrators evidence of the discriminatory practices or polices that allegedly affect them. *See Bacon*, 370 F.3d at 575; *Parisi*, 710 F.3d at 488. And the arbitrators may fashion appropriate relief based on the evidence presented. Arbitrators, like district courts, are not categorically prohibited from granting injunctive relief benefitting an entire class in an individual suit when

the facts indicate a company policy or practice in violation of a federal anti-discrimination statute, so long as the injunctive relief is no more burdensome to the defendant than necessary to provide complete relief to the plaintiff. *See Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733-34 (5th Cir. 1977).

The Court further notes that the pattern-or-practice method of proving discrimination will continue to be available to the government, continuing to advance the purposes of the anti-discrimination statutes. And the arbitration agreement "will not preclude the EEOC from bringing actions seeking class-wide and equitable relief." *Gilmer*, 500 U.S. at 32.

### E. Plaintiffs Do Not Have Standing to Challenge the Opt-Out Provision

The fact remains that Plaintiffs have failed to explain how they have standing to argue that the opt-out provision in the arbitration agreement impedes the EEOC's enforcement powers. As the Court explained in its May 24, 2018 Order, Plaintiffs in this case were not prevented from filing, and did in fact file, discrimination and retaliation charges with the EEOC. Plaintiffs also participated in the EEOC's investigation. The EEOC then elected not to pursue individual or class actions on Plaintiffs' behalf. Under these circumstances, Plaintiffs cannot show that they have actually suffered a concrete injury. The Court further noted that arbitration agreements between private parties do not bind the EEOC or prevent the EEOC from bringing actions seeking class-wide relief. *See Gilmer*, 500 U.S. at 32. Further, the EEOC has independent authority to investigate discrimination, and nothing in Title VII, the ADA, or the ADEA indicates that Congress intended that the EEOC be involved in all employment disputes. *See id.* at 28. The Court concluded that, even assuming that the arbitration agreement violates Title VII's, the ADA's, and the ADEA's

12

procedural requirements, Plaintiffs have not shown that the violation resulted in concrete harm or entails a degree of risk sufficient to meet the concreteness requirement.

Plaintiffs ask the Court to reconsider its ruling asserting that they have standing to challenge the opt-out provision because they have suffered an intangible harm, and that the Court should look to the fact that Congress provided a right to seek company-wide injunctive relief, and the fact that the arbitration agreement limits that right. Plaintiffs offer that "by specifically prohibiting an employer form limiting its employees in any way that would tend to deprive them of rights under the Acts, Congress identified 'intangible harms' that meet the minimum requirement of Article III."[2] Plaintiffs further assert that because the arbitration agreement requires employees to opt out of any proceeding initiated on their behalf, there is a substantial risk that harm will occur because employees cannot seek injunctive relief on a company-wide basis.[3]

These arguments are somewhat circular in that they lead to the central issue, and the Court's conclusion discussed above: Plaintiffs simply do not have a substantive right to

---

[2]As explained in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."

[3]Unlike the cases discussed in *Spokeo*, 136 S. Ct. at 1549-50 and in *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342-43 (2014), this case does not involve a substantial risk that harm will occur that is not wholly speculative. Those cases involved factual scenarios such as voters' inability to obtain information that Congress had made public, advocacy organizations' inability to obtain information that Congress had made subject to disclosure, and credible threats of enforcement of laws where the plaintiffs had intention to engage in conduct affected with constitutional interests.

bring a class action under Title VII, the ADA, or the ADEA. Plaintiffs' arguments boil down to a series of conclusory assertions. However, as discussed above, by signing the arbitration agreement, Plaintiffs did not forego any substantive right in Title VII, the ADA, or the ADEA. See *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 653 (6th Cir. 2003) (en banc). Rather, Plaintiffs agreed to waive their right to pursue lawsuits in federal court and use class action procedures in exchange for the streamlined efficiency, procedural informality, and low costs of arbitration. As discussed above, Title VII, the ADA, and the ADEA permit such a waiver. In short, Defendant and Plaintiffs reached exactly the type of agreement that the FAA favors and requires courts to rigorously enforce.

## IV. CONCLUSION

For the reasons set forth above,

The Court hereby DENIES Plaintiffs' motion for reconsideration (Dkt. # 16).

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 15, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 15, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager