UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN P. WILLIAMS
and JAY HOWARD,

       Plaintiffs,

v.

DEARBORN MOTORS 1, LLC,
d/b/a ALL PRO NISSAN OF DEARBORN,

       Defendant.

Case No. 17-12724

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [24] AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [26] REGARDING PLAINTIFF WILLIAMS' INDIVIDUAL CLAIMS**

Plaintiffs are former employees of Defendant Dearborn Motors 1, LLC, d/b/a All Pro Nissan of Dearborn, who were required to sign an arbitration agreement as a condition of continued employment with Defendant. Plaintiff Brian Williams ("Plaintiff" or "Williams") refused to sign the arbitration agreement and was terminated. Plaintiff alleges that his termination was unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count IV), the Age Discrimination in Employment Act ("ADEA") (Count V), and the Americans with Disabilities Act ("ADA") (Count VI). Currently before the Court are cross-motions for judgment on the pleadings regarding these claims. (Dkts. 24, 26.) For the reasons discussed below, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

**I.    Background**

1

Defendant is a car dealership located in Dearborn, Michigan. According to the First Amended Complaint, Williams began working for Defendant as a porter in May 2015. Plaintiff Jay Howard began working for Defendant as a mechanic in June 2015. In December 2015, Defendant advised Plaintiffs and all other employees that they were required to sign an arbitration agreement in order to remain employed. After returning from sick leave for neuropathy, epilepsy, sickle cell disease, and depression, Williams refused to sign the arbitration agreement, and Defendant terminated his employment in January 2016 as a result. Howard, on the other hand, did sign the arbitration agreement to keep his job.[1]

In January 2016, Williams filed charges of discrimination with the EEOC. (Dkt. 3-3.) In October 2016, the EEOC determined that there was reasonable cause to believe that Defendant violated Title VII, the ADA, the Equal Pay Act, the ADEA, and the Genetic Information Non-Disclosure Act. (Dkt. 3-4.) In January 2017, the State of Michigan denied Williams unemployment benefits because, according to Defendant, Williams had been fired for misconduct in violation of company policy. (Dkt. 3-6.) In March 2017, the EEOC issued Williams Notice of Right to Sue letters. (Dkt. 3-7.)

Plaintiff originally filed this lawsuit in August 2017. In their First Amended Complaint, in addition to Plaintiffs' individual claims, Plaintiffs brought class claims of discrimination in violation of Title VII, the ADA, and the ADEA on behalf of themselves and a class of Defendant's employees and former employees who were similarly required to sign an arbitration agreement. Defendant brought a motion to dismiss the

---

[1] Defendant later terminated Howard's employment. However, the Court will only discuss the facts related to Howard to the extent necessary to understand the issues relevant to Williams' claims.

class claims and to compel arbitration of Howard's individual claims. Plaintiffs responded by arguing that both the class action waiver and out-out provisions of the arbitration agreement were unenforceable. This Court rejected those arguments and granted Defendant's motion. *See Williams v. Dearborn Motors 1, LLC*, No. 17-12724, 2018 U.S. Dist. LEXIS 87176, at *21 (E.D. Mich. May 24, 2018). The Court also considered and denied a motion for reconsideration of that decision. *See Williams v. Dearborn Motors 1, LLC*, No. 17-12724, 2018 U.S. Dist. LEXIS 137825 (E.D. Mich. Aug. 15, 2018).

Plaintiff Williams now brings a motion for a judgment on the pleadings or, in the alternative, for partial summary judgment on his individual retaliation claims, (dkt. 24), and Defendant brings a cross-motion for a judgment on the pleadings on those same claims, (dkt. 26). Responses and replies have been filed to both motions. (Dkts. 29, 33, 36.) The Court heard oral arguments on the motions on January 16, 2019.

## II. Legal Standard

Plaintiff and Defendant seek a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Motions for a judgment on the pleadings under Rule 12(c) are analyzed under the same standard as motions to dismiss for failure to state a claim under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)). In reviewing the motion, courts "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him [or her] to relief." *Id.* at 512 (citing *Mixon*, 193 F.3d at 400).

## III.    Analysis

Title VII makes it unlawful for an employer to discriminate against any of its employees because that employee "has opposed any practice made an unlawful employment practice by this title."[2]  42 U.S.C. § 2000e-3(a).  Both the ADEA and ADA contain similar anti-retaliation provisions.  See 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a).  The elements of a prima facie case of retaliation are the same under all three statutes.  In order to establish retaliation, Plaintiff must prove that 1) he engaged in protected activity, 2) Defendant knew he exercised in protected activity, 3) an adverse employment action was subsequently taken against him, and 4) there was a causal connection between the protected activity and the adverse employment action.  See Morris v. Oldham Cty. Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000) (Title VII); Fox v. Eagle Distrib. Co., 510 F.3d 587, 591 (6th Cir. 2007) (ADEA); Penny v. United Parcel Serv., 128 F.3d 408, 417 (6th Cir. 1997) (ADA).

Plaintiff argues that he is entitled to a judgment on the pleadings because he engaged in protected activity when he refused to sign the arbitration agreement he believed was unlawful, Defendant knew that he engaged in that protected activity, an adverse employment action was taken against him when he was terminated, and his termination was admittedly a result of his refusal to sign the arbitration agreement. Defendant disputes elements one, two, and four of Plaintiff's prima facie case of retaliation.  Defendant argues that because the arbitration agreement was lawful, as this Court has already held, Plaintiff cannot establish the protected activity element of his

---

[2] This is known as the opposition clause of the anti-retaliation provisions.

prima facie case. Defendant further argues that Plaintiff cannot establish but-for causation and that it is entitled to a judgment on the pleadings.

To prove that he engaged in protected activity under the opposition clause, Plaintiff "must establish that he challenged an employment practice that he reasonably believed was unlawful." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) (citation omitted). This may include "refusing to obey an order because the worker thinks it is unlawful." *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). Plaintiff argues that it is irrelevant that this Court upheld the enforceability of the arbitration agreement. Rather, according to Plaintiff, because he had a good faith belief that the agreement was unlawful, refusing to sign it constituted protected activity.

While Plaintiff is correct that the challenged practice need not ultimately be found unlawful, *see id.* at 579-80, his belief that the arbitration agreement was unlawful must not only have been made in good faith but must also be reasonable, *see Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 401 (6th Cir. 2015) (noting that the belief that an employment practice was unlawful has both a subjective and objective component and finding the belief held by the plaintiff in that case not objectively reasonable) (unpublished).[3] Plaintiff's argument focuses only on the subjective component of the analysis and ignores the objective component.

In *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002), the Eleventh Circuit Court of Appeals considered whether plaintiffs' subjective belief that

---

[3] This was a retaliatory discharge case brought under the False Claims Act, but such claims "proceed under the same rules applicable to other employment-related retaliation." *See Jones-McNamara*, 630 F. App'x at 397-98.

5

mandatory arbitration was unlawful was "objectively reasonable."  The court noted that, at that time, arbitration agreements had received "near universal approval" and conducted a lengthy analysis regarding the enforceability of arbitration agreements in the context of employment discrimination claims.  See id. at 1312-15.  Thus, despite an older Ninth Circuit case disallowing mandatory arbitration of such claims and EEOC policy statements to the contrary, the court held that the plaintiffs' belief was not reasonable and therefore their refusal to agree to compulsory arbitration was not protected activity.  Id. at 1315.

Here, Plaintiffs did not believe that mandatory arbitration itself was unlawful like the plaintiffs in Weeks did, but rather believed that the arbitration agreement was unlawful due to some of its material terms.  See Williams, 2018 U.S. Dist. LEXIS 87176, at *9-20 (rejecting the arguments that the arbitration agreement was unlawful and unenforceable due to its class action waiver and opt-out provisions).  Nonetheless, the Court finds that this belief was not objectively reasonable.  As the Court previously noted, "'[i]n the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms.'"  See Williams, 2018 U.S. Dist. LEXIS 137825, at *4 (quoting Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1619 (2018)).[4]  To now find that a belief that particular terms of an arbitration agreement render it

---

[4] Plaintiff argues that Epic Systems was handed down by the Supreme Court after he refused to sign the arbitration agreement.  However, the Federal Arbitration Act was passed by Congress in 1925 and "manifest[s]" a "liberal federal policy favoring arbitration agreements."  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (quotations and citation omitted).  Moreover, Epic Systems only dealt with the enforceability of the class action provision in the arbitration agreement, not the arbitration agreement as a whole.  Even if Plaintiff believed the class action provision was unenforceable, he could have signed the agreement and challenged that provision in court, as he in fact did.

unlawful is objectively reasonable would run contrary to that instruction and established caselaw favoring arbitration agreements. Moreover, it would render the reasonableness inquiry meaningless.

And even if Plaintiff's belief in the unlawfulness of the arbitration agreement was objectively reasonable, Plaintiff's argument that his refusal to sign the arbitration agreement constituted protected activity fails for another reason. "In order to receive protection under the ADEA, a plaintiff's expression of opposition must concern a violation of the ADEA." *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591-92 (6th Cir. 2007) (finding that Plaintiff's complaints about the denial of his promotion did not constitute protected activity under the ADEA because he did not reference alleged acts of age discrimination).

Here, Plaintiff did not believe that the arbitration agreement was unlawful under the relevant statutes because requiring him to sign it constituted discrimination in and of itself, but rather because it deprived him of his right to seek redress under those statutes. In other words, his belief was that requiring him to sign the arbitration agreement violated the statutes' procedural requirements rather than their substantive requirements. Thus, his act of opposition—refusing to sign the arbitration agreement— did not concern an act of race, age, or disability discrimination and is therefore insufficient to serve as a basis for his retaliation claims. *See Weeks*, 291 F.3d at 1316 (stating that it would require "intellectual dishonesty" to "extrapolate from [the lists of unlawful employment practices in Title VII, the ADEA, and the ADA] the premise that the action of an employer requiring employees to arbitrate employment disputes is an 'unlawful' employment practice").

7

In sum, Plaintiff's refusal to sign a lawful arbitration agreement was not protected activity because his belief that the arbitration agreement was unlawful was not objectively reasonable nor was his act of opposition related to a violation of or an unlawful employment practice under Title VII, the ADEA, or the ADA.[5] Therefore, Plaintiff has not alleged a prima facie case of retaliation and Defendant is entitled to a judgment on the pleadings.

IV. **Conclusion**

For the above-stated reasons, Plaintiff Williams' motion for judgment on the pleadings or, in the alternative, for partial summary judgment on his individual retaliation claims (Counts IV, V, and VI) is DENIED and Defendant's motion for a judgment on the pleadings on those same claims is GRANTED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 22, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 22, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

---

[5] Because the Court finds that Plaintiff did not engage in protected activity, there is no need to discuss Defendant's arguments regarding the knowledge and causation elements of Plaintiff's prima facie case. See *Jones-McNamara*, 630 F. App'x at 404 (stating that because the court had concluded that plaintiff did not engage in protected activity, there was no need to discuss the arguments regarding the remaining elements of plaintiff's prima facie case).