UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN P. WILLIAMS
and JAY HOWARD,                                      Case No. 17-12724

        Plaintiffs,                              Honorable Nancy G. Edmunds

v.

DEARBORN MOTORS 1, LLC,
d/b/a ALL PRO NISSAN OF DEARBORN,

        Defendant.

_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
PLAINTIFFS' RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT [52]**

Before the Court is Plaintiffs' motion for entry of default judgment following the

Clerk's entry of default against Defendant Dearborn Motors 1, LLC in this matter. (Dkt.

52.) Plaintiffs assert they are entitled to default judgment because Defendant has failed

to appear in two court-ordered status conferences or participate in discovery. The Court

held a hearing on the motion on September 18, 2019, during which only Plaintiffs'

counsel appeared. The Court also allowed Plaintiffs additional time to submit evidence

of damages. (*See* dkt. 54.) Having reviewed and fully considered the pleadings and

the evidence submitted by Plaintiffs and for the reasons stated below, the Court

DENIES Plaintiffs' motion as to Plaintiff Williams and GRANTS IN PART the motion as

to Plaintiff Howard.

    **I.**     **Background**

Defendant was a car dealership located in Dearborn, Michigan. According to the

First Amended Complaint, Plaintiff Brian P. Williams, who is African-American, began

working for Defendant as a porter in May 2015. Plaintiff Jay Howard, who is also

African-American, began working for Defendant as a mechanic in June 2015. In

December 2015, Defendant advised Plaintiffs and all other employees that they were

required to sign an arbitration agreement in order to remain employed. After returning

from sick leave, Williams refused to sign the arbitration agreement, and Defendant

terminated his employment in January 2016 as a result. Howard, on the other hand, did

sign the arbitration agreement to keep his job.

In January 2016, Plaintiff Williams filed a charge with the EEOC, alleging he was

terminated in retaliation for failing to sign the arbitration agreement in violation of his

federal rights.[1] (Dkt. 3-3, PgID 86.) In October 2016, the EEOC issued a determination

on the merits of this charge, finding there was reasonable cause to believe the

allegations in the charge were true. (Dkt. 3-4, PgID 90-91.) The EEOC sent Defendant

a conciliation agreement, which Defendant did not agree to.

In January 2016, Howard allegedly complained of race-based issues to

Defendant, including that Caucasians were paid at a higher rate than their African-

American counterparts. In February 2016, Plaintiff Howard filed a charge of

discrimination with the EEOC, alleging he was subjected to different terms and

conditions of his employment due to race, retaliated against for complaining about race-

based discrimination, and forced to sign an arbitration agreement denying him access to

his legal rights. (Dkt. 3-8, PgID 109-10.) In October 2016, the EEOC issued a

---

[1] Williams filed a second charge of discrimination, alleging he was denied the
position of oil technician because of his disability and race and that Defendant paid him
and other African-American workers less wages because of their race, (dkt. 3-3, PgID
87), but the EEOC dismissed this charge without addressing it on the merits, (dkt. 3-4,
PgID 89).

determination on the merits of the charge, finding that there was reasonable cause to believe the allegations were true. (Dkt. 3-9, PgID 114-15.) The EEOC also sent Defendant a conciliation agreement, which Defendant did not agree to. In May 2017, Defendant terminated Howard's employment. In August 2017, Plaintiff Howard filed a second charge with the EEOC, alleging he was retaliated against and discharged in retaliation for filing his first EEOC charge. (Dkt. 3-8, PgID 111.)

On August 18, 2017, Plaintiffs brought this lawsuit, seeking to represent a class of Defendant's employees and former employees who were similarly required to sign an arbitration agreement, arguing that the agreement was a violation of their rights pursuant to Title VII of the Civil Rights Act ("Title VII) (Count I), the Americans with Disabilities Act ("ADA") (Count II), and the Age Discrimination in Employment Act ("ADEA") (Count III). More specifically, Plaintiffs challenged the class action waiver and opt-out provisions of the arbitration agreement.

In addition to their class claims, Plaintiff brought a number of individual claims. Plaintiff Williams alleged his termination was unlawful retaliation in violation of Title VII (Count IV), the Age Discrimination in Employment Act ("ADEA") (Count V), and the Americans with Disabilities Act ("ADA") (VI). Plaintiff Howard alleged he was racially discriminated against in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") (Count VII) due to differential pay practices, treatment, and working conditions when compared to similarly situated non-African American mechanics. Plaintiff Howard also alleged his termination was unlawful retaliation in violation of Title VII (Count IV) and ELCRA (Count VIII).

Defendant brought a motion to dismiss the class claims and to compel arbitration of Howard's individual claims. This Court granted that motion, finding both the class action waiver and opt out provisions of the arbitration agreement enforceable; thus, the class claims were dismissed, and Plaintiff Howard was required to submit his individual claims to arbitration. (Dkt. 14.) The Court also considered and denied a motion for reconsideration of that decision. (Dkt. 21.)

Plaintiff Williams and Defendant later brought cross-motions for a judgment on the pleadings on Williams' individual retaliation claims. The Court denied Plaintiff Williams' motion and granted Defendant's motion, finding that Williams' refusal to sign a lawful arbitration agreement was not protected activity as a matter of law because his belief that the arbitration agreement was unlawful was not objectively reasonable and his act of opposition was not an unlawful employment practice under Title VII, the ADEA, or the ADA. (Dkt. 39.)

Plaintiff Howard also brought a motion to resume proceedings of his individual claims in federal court, asserting that Defendant was not cooperating with arbitration. Defendant informed the Court that it no longer had the funds to pay for an arbitrator, and the Court granted Howard's motion. (Dkt. 38.)

On March 19, 2019, Defendant's former counsel brought a motion to withdraw, asserting that Defendant was insolvent and unable to pay its legal fees. On March 21, 2019, a stipulated order was entered granting the motion to withdraw and giving Defendant sixty days to secure new counsel. (Dkt. 43.) The order set forth that "[i]f at the end of the 60-day period, an appearance has not been made on behalf of Defendant, or a stipulated judgment has not been filed, Plaintiff Howard may file a

4

motion for default judgment.  Likewise, Plaintiff Williams may also file a motion for default judgment to the extent he has any remaining claims, an issue to be determined by the Court.  Defendant maintains that all of Plaintiff Williams' individual claims have been dismissed with prejudice by previous rulings of the Court." (*See id.*)  To date, no attorney has made an appearance on behalf of Defendant.

The Court denied Plaintiffs' first motion for entry of default judgment under Rule 55(b), because Plaintiffs had failed to request and obtain an entry of default by the Clerk under Rule 55(a).  (Dkt. 48.)  Plaintiffs have now properly obtained a Clerk's entry of default against Defendant.  (*See* dkt. 50.)  According to Plaintiffs' renewed motion for entry of default judgment, Plaintiff Howard seeks $176,916.21 in back pay, $13,000.00 in compensatory damages, $15,000.00 in punitive damages, and $37,265.00 in attorney's fees and costs, while Plaintiff Williams seeks $86,723.60 in back pay and $10,000.00 in compensatory damages.  (Dkt. 52.)  Plaintiffs relied in large part on the EEOC's calculations as the basis for their request for damages.  However, after the Court indicated during oral argument that it did not have before it sufficient evidence of damages, Plaintiffs submitted a supplemental brief and additional evidence.  (Dkt. 54.)  More specifically, Plaintiffs submitted the documents utilized by the EEOC, the contents of which are partially redacted, along with a declaration from each plaintiff.  Plaintiff Howard now seeks $241,130.00 in back pay and Plaintiff Williams seeks $139,290.00 in back pay.

## II.    Legal Standard

Federal Rule of Civil Procedure 55 allows the Court to enter a default judgment against a defendant who has failed to plead or otherwise defend against an action.

Once the Clerk enters a default, all of a plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). When the amount of damages is uncertain, the plaintiff must apply to the court for a default judgment. Rule 55(b)(2) sets forth that

> [t]he court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages: (c) establish the truth of any allegation by evidence; or (D) investigate any other matter.

"'This provision, by its terms, allows but does not require the district court to conduct an evidentiary hearing.'" *Hett v. Bryant Lafayette and Assocs., LLC*, No. 10-12479, 2011 U.S. Dist. LEXIS 18253, at *4 (E.D. Mich. Feb. 24, 2011) (quoting *Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009)). The burden of establishing the extent of the damages rests, however, with the plaintiff. *See Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011).

### III. Analysis

#### A. Whether Defendant is in Default

It is settled law that a corporation cannot appear in federal court except through an attorney. *See Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984). The Court cannot waive this rule even in cases of severe financial hardship. *See Alli v. United States*, 93 Fed. Cl. 172, 177, 177 n.8 (2010) (collecting cases). Thus, where a corporation has repeatedly failed to appear by counsel or where the corporate defendant has been under an order of the court to appoint counsel for an extended period of time, a default judgment may be entered against it pursuant to Rule 55. *See Sec. & Exch. Comm'n v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975);

*Alli*, 93 Fed. Cl. at 177, 177 n.9 (collecting cases).  Therefore, the Court finds that

Defendant is in default because no attorney has made an appearance on its behalf after

the Court entered the stipulated order granting Defendant's former counsel's motion to

withdraw and ordering Defendant to obtain new counsel within sixty days.

### B.     Whether Plaintiffs are Entitled to Default Judgment

Even though Defendant is in default, this is only the starting point of the inquiry.

"'A defendant's default does not in itself warrant the court in entering a default judgment.

There must be a sufficient basis in the pleadings for the judgment entered.'"  *FENF, LLC*

*v. Yogabody Naturals LLC*, No. 16-13483, 2017 U.S. Dist. LEXIS 221154, at *2 (E.D.

Mich. June 26, 2017) (quoting *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d

1200, 1206 (5th Cir. 1975)).  In other words, the complaint must be able to survive a

Rule 12(b)(6) motion to dismiss.  *See id.*  "Thus, before entering judgment in favor of the

[moving party], the district court ha[s] a duty to ensure that the allegations in the verified

complaint [are] sufficient."  *See United States v. $525,695.24*, 869 F.3d 429, 441 (6th

Cir. 2017).  If the court finds that the facts do not sufficiently state a claim, it will not

enter default judgment against the party in default.  *See, e.g.*, *Bacon v.*

*Equityexperts.org, LLC*, No. 17-12848, 2018 U.S. Dist. LEXIS 106345, at *10 (E.D.

Mich. June 26, 2018).  Thus, the Court will first consider whether Plaintiffs are entitled to

a default judgment in this matter and only if so, will it make a determination as to

damages.

### 1.     Plaintiff Williams

All of Plaintiff Williams' individual retaliation claims pled in Counts IV, V, and VI of

the complaint have been dismissed by this Court.  Plaintiff Williams now argues,

however, that he is entitled to entry of default judgment based on the allegation that he was subjected to differential pay practices based on race.  However, this allegation was embedded within the class claim pled in Count I that has been dismissed.  (*See* dkt. 3, PgID 67.)  And while Plaintiff Howard explicitly brought a claim based on race discrimination in Count VII of the complaint, Plaintiff Williams did not do so.  Thus, the Court finds that Plaintiff Williams did not sufficiently state a claim of racial discrimination, and he is not entitled to entry of default judgment.[2]

### 2.  Plaintiff Howard

#### a.  Liability

Plaintiff Howard's individual claims pled in Counts IV, VII, and VIII of the complaint remain viable.  Howard alleges that he was discriminated against in violation of ELCRA (Count VII) and retaliated against in violation of Title VII (Count IV) and ELCRA (Count VIII).  While the complaint itself does not set forth very many details, the Court also considers the EEOC charge and documents attached to the complaint.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Under ELCRA, it is unlawful for an employer to "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment,

---

[2] Even if Plaintiff Williams was entitled to a default judgment, the Court would not award him any damages.  The damages set forth in the EEOC's conciliation agreement, which he relies upon, were based entirely on the EEOC's finding that there was reasonable cause to believe that Williams was discharged for failing to sign an unlawful arbitration agreement in violation of his federal rights—a claim this Court has rejected. And while his declaration states that "[h]ad [he] been paid like [his] similarly situated colleagues from May 21, 2015 to January 11, 2016, [he] would have made an approximate additional $11,470," (dkt. 54-3, PgID 1003), the basis for this calculation is unclear.

compensation, or a term, condition, or privilege of employment, because of . . . race."

Mich. Comp. Laws § 37.2202(1)(a). To establish a prima facie case of discrimination

under ELCRA, plaintiff must show he 1) belongs to a protected class, 2) suffered an

adverse employment action, 3) was qualified for the position, and 4) was replaced by

someone outside the protected class or treated differently than similarly situated

employees from outside the class. *See Sniecinski v. Blue Cross & Blue Shield of Mich.*,

666 N.W.2d 186, 193 (Mich. 2003).

Here, Plaintiff Howard states that he is an African-American and was working as

a mechanic for Defendant. He alleges he was paid less than his Caucasian

counterparts. More specifically, he was paid $14.00 per hour, while they were paid

$26.00 per hour. (*See* dkt. 3-10, PgID 120.) He also states that he was assigned work

duties outside of his job description and that the tasks he should have been doing were

reassigned to co-workers outside of his protected class even though they had lower

credentials. (Dkt. 3-8, PgID 109.) Thus, the Court finds that Howard has set forth

sufficient facts to establish a prima facie case of racial discrimination, and he is entitled

to a default judgment on this claim.

Title VII makes it unlawful for an employer to discriminate against any of its

employees because that employee "has opposed any practice made an unlawful

employment practice by this title, or because he has made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or hearing under this title."

42 U.S.C. § 2000e-3(a). ELCRA has a similar anti-retaliation provision. *See* Mich.

Comp. Laws § 37.2701(a). To establish a prima facie case of retaliation under both

statutes, Plaintiff must establish that 1) he engaged in protected activity, 2) Defendant

knew he exercised a protected right, 3) an adverse employment action was subsequently taken against him, and 4) there was a causal connection between the protected activity and the adverse employment action. *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (Title VII); *DeFlaviis v. Lord & Taylor, Inc.*, 566 N.W.2d 661, 663 (Mich. Ct. App. 1997) (ELCRA).

Here, Plaintiff Howard alleges he was retaliated against for opposing the arbitration agreement he believed was unlawful, complaining about race-based discrimination, and filing an EEOC complaint. To the extent Plaintiff Howard relies on the same argument Plaintiff Williams made in support of his retaliation claims—that he was retaliated against for opposing the arbitration agreement, Howard is not entitled to a default judgment for the same reason Williams was not entitled to a judgment on the pleadings—refusing to sign a lawful arbitration agreement is not protected activity as a matter of law. *See Williams v. Dearborn Motors 1, LLC*, No. 17-12724, 2019 U.S. Dist. LEXIS 9595, at *9 (E.D. Mich. Jan. 22, 2019). But to the extent Howard alleges he was retaliated against for complaining about race-based discrimination and filing an EEOC complaint, these acts do constitute protected activity. Howard's allegations also satisfy the remaining elements of his prima facie case of retaliation. For example, he avers that after he was discharged for clocking in early, he was rehired the same day after complaining of race-based issues, (dkt. 3-8, PgID 109), indicating Defendant knew he exercised a protected right. He also alleges that after this incident, he was forced to perform menial tasks and experienced reduced work hours. (*Id.*) Howard also alleges that after filing his EEOC charge, his work schedule was changed, his requests for leave were denied, and his employment was eventually terminated. (*Id.* at PgID 111.)

He states that in response to the EEOC conciliation agreement, Defendant told him that "there is no way in the world" it was going to pay him "that ridiculous amount of money" and "would continue to fight the EEOC to the end of this world" or until he "turns blue in the face."[3] (Dkt. 3, PgID 63.) Thus, the Court finds that Howard has set forth sufficient facts to establish a prima face case of retaliation to the extent these claims are based upon the adverse acts he experienced in retaliation for complaining about race-based discrimination and filing an EEOC complaint. In sum, Plaintiff Howard is entitled to a partial default judgment on his retaliation claims.

### b.    Damages

Having found that Plaintiff Howard is entitled to a partial default judgment, the Court moves to a determination of the amount of damages. Howard requests back pay, compensatory damages, punitive damages, and attorney fees and costs. To support his request, he has provided both a declaration made by him under penalty of perjury along with the EEOC files in this case.[4]

"[S]uccessful Title VII plaintiffs are presumptively entitled to back pay." *Pittington v. Great Smoky Mt. Lumberjack Feud, LLC*, 880 F.3d 791, 799 (6th Cir. 2018) (citation omitted). The plaintiff bears the burden of proving damages with "reasonable certainty." *Id.* Backpay is calculated by subtracting the amount the plaintiff actually earned while

---

[3] It is unclear when Defendant is alleged to have made this comment. However, the conciliation agreement was dated October 5, 2016, (dkt. 3-9, PgID 113), and Howard's employment was terminated on May 2, 2017, (dkt. 3, PgID 63).

[4] The EEOC files constitute 279-pages of documents, which are not tabbed or organized by Plaintiffs in any meaningful way. Moreover, they include a number of unsworn statements and letters that have little probative value. Nonetheless, the Court has reviewed and considered these documents to the extent possible.

being discriminated against from the amount that the plaintiff would have earned if no discrimination had occurred. *Id.* Also, "lost overtime is a well-established part of a back pay award." *See United States v. City of Warren*, 138 F.3d 1083, 1097 (6th Cir. 1998). And while plaintiffs are required to mitigate their damages, the defendant bears the burden of establishing any interim earnings or lack of diligence. *See Pittington*, 880 F.3d at 799-800 ("the plaintiff is entitled to the amount claimed unless the defendant can prove otherwise") (internal quotation marks and citations omitted). The approach of Michigan courts on the issue of backpay "is in harmony with that utilized in federal courts." *See Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 27 (Mich. 1994).

Here, Plaintiff Howard requests $47,040.00 in backpay based on the difference between the $14.00 per hour he was earning and the $26.00 per hour his Caucasian co-workers were earning during his time of employment (from June 18, 2015 until May 2, 2017). (Dkt. 54-2, PgID 997; dkt. 3-10, PgID 120.) He also requests $38,220.00 for lost overtime during his period of employment based on his testimony that his Caucasian co-workers were allowed to work ten hours of overtime per week, while he was not. (Dkt. 54-2, PgID 997-98.) Finally, Howard requests $155,870.00 in lost wages based on the assumption that had he not been terminated, he would have continued to work for Defendant fifty hours per week from the date of his termination until present. (*Id.*) This amounts to a total of $241,130.00. Considering Howard's testimony, the documents submitted as a part of the EEOC file, and the EEOC's findings, the Court finds that Plaintiff has sustained his burden of proving that he is entitled to an award in this amount.

Under Title VII, a plaintiff may be awarded compensatory damages "for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  *See* 42 U.S.C. § 1981a(b)(3).  To be eligible for such damages, however, a plaintiff is required to provide proof of injury.  *See Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1082 (6th Cir. 1999).  ELCRA similarly allows for damages to compensate a person for "humiliation, embarrassment, and outrage" resulting from the discrimination.  *See Dept. of Civil Rights ex rel. Johnson v. Silver Dollar Cafe*, 499 N.W.2d 409, 410 (Mich. Ct. App. 1993).  Here, Howard has not presented any evidence that he has suffered any injury, such as emotional distress.  Thus, the Court will not award him any compensatory damages.

Punitive damages are not available under ELCRA.  *See Gilbert v. DaimlerChrysler Corp.*, 685 N.W.3d 391, 400 (Mich. 2004).  And while Title VII does allow for an award of punitive damages, "a plaintiff must demonstrate that the individuals perpetrating the discrimination acted with malice or reckless indifference toward the plaintiff's federally protected rights."  *See Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 572 (6th Cir. 2019) (internal quotation marks and citations omitted).  Here, Plaintiff has not presented any evidence of malice or reckless indifference.  Thus, the Court will not award any punitive damages.

Both Title VII and ELCRA authorize the Court to award attorney's fees and costs to the prevailing party.  *See* 42 U.S.C. § 2000e-5(k); Mich. Comp. Laws § 37.2802.  To calculate a reasonable attorney's fees award, courts use the "lodestar" method, which requires the Court to multiple a reasonable hourly rate by the reasonable number of hours worked.  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)

(internal quotation marks and citations omitted).  A court may consider adjusting the fee based on a number of factors, including the "the degree of the success obtained."  *Id.* at 822.  Similarly, under Michigan law, an award of attorney fees involves first "[m]ultiplying the reasonable hourly rate by the reasonable hours billed [to] produce a baseline figure" and then considering other factors to determine whether they support an increase or decrease in the base number.  *Smith v. Khouri*, 751 N.W.2d 472, 480-81 (Mich. 2008).

Here, Plaintiff Howard requests all of the legal fees incurred in the prosecution of this matter.  According to the documentation submitted by Plaintiffs' counsel, however, of the attorney's fees and costs requested, $27,223.75 were incurred during the representation of Plaintiff Williams and only $10,423.75 were incurred during the representation of Plaintiff Howard.  (Dkt. 52-10.)  The $10,423.75 is based upon 42.75 hours worked and billed at a rate of $300.00 or $225.00 per hour.  The Court finds the hourly rate requested reasonable.  However, considering that many of these fees were incurred during the litigation of matters the Court resolved in Defendant's favor prior to its default, the Court will reduce the number of hours worked by 50%.[5]  Thus, the Court awards Plaintiff Howard $5,771.88 in attorney's fees and costs.

### 3. Conclusion

For the above-stated reasons, Plaintiffs' renewed motion for entry of default judgment is DENIED as to Plaintiff Williams and GRANTED IN PART as to Plaintiff Howard.  Accordingly, the Court will enter a partial default judgment in favor of Plaintiff

---

[5] Of the 42.75 hours worked, only 1.4 hours worked were performed by the partner on this case and billed at a rate of $300.00 per hour, while the remaining 41.35 hours were performed by an associate and billed at the lower rate of $225.00 per hour. The Court reduces the latter by 50%.

Howard and award him $241,130.00 in damages and $5,771.88 in attorney's fees and costs.

        SO ORDERED.

                        s/Nancy G. Edmunds
                        Nancy G. Edmunds
                        United States District Judge

Dated: March 16, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 16, 2020, by electronic and/or ordinary mail.

                        s/Lisa Bartlett
                        Case Manager