## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: August 30, 2021

Mr. Adam Shereef Abu Akeel
Akeel & Valentine
888 W. Big Beaver Road
Suite 420
Troy, MI 48084

     Re: Case No. 20-1351, *Brian Williams, et al v. Dearborn Motors 1, LLC*
       Originating Case No. : 2:17-cv-12724

Dear Counsel,

 The Court issued the enclosed opinion today in this case.

             Sincerely yours,

             s/Cathryn Lovely
             Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0409n.06

No. 20-1351

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BRIAN WILLIAMS, et al., | ) | |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| DEARBORN MOTORS 1, LLC, dba All Pro Nissan of Dearborn, | ) ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) ) ) | |

FILED
Aug 30, 2021
DEBORAH S. HUNT, Clerk

BEFORE:   COLE, ROGERS, and MURPHY, Circuit Judges.

ROGERS, Circuit Judge.  Plaintiffs Brian Williams and Jay Howard appeal from a district court judgment upholding a class action waiver policy in a mandatory employment arbitration agreement provided by their former employer.  Plaintiffs contend that the class waiver violates their civil rights by depriving them of the ability to pursue pattern-or-practice employment discrimination claims and by limiting the scope of relief available in such actions.  However, the Supreme Court has repeatedly affirmed the validity of class waiver policies under the Federal Arbitration Act and federal labor laws, including with respect to employment discrimination disputes.  Because the class waiver policy in this case did not violate any civil rights laws, dismissal of plaintiffs' class-based discrimination claims was proper.  Similarly, because Williams's refusal to sign the arbitration agreement did not constitute a protected activity, he failed to establish a prima facie case for retaliation, and dismissal of his retaliation claims was also proper.

No. 20-1351, *Williams, et al. v. Dearborn Motors 1, LLC*

## I.

Brian Williams and Jay Howard are former employees of defendant Dearborn Motors 1, LLC, d/b/a All Pro Nissan of Dearborn, a car dealership located in Dearborn, Michigan. Several months into their employment, defendant advised plaintiffs that they were required to sign an arbitration agreement in order to remain employed. Williams refused to sign the arbitration agreement and was fired as a result. Howard did sign the agreement in order to continue his employment.

Williams subsequently filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging that his termination constituted unlawful retaliation for his refusal to sign the arbitration agreement, which he contended was a violation of his legal rights under Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), the Equal Pay Act, the Age Discrimination in Employment Act ("ADEA") and the Genetic Information Non-Disclosure Act. Williams also alleged that he experienced race discrimination in the form of lower compensation and less desirable placement, and disability discrimination because he was denied a reasonable accommodation in the form of alternative work at the dealership. After investigating, the EEOC determined that there was "reasonable cause" to believe that Williams's allegations were true "with respect to himself and a class of harmed parties." After efforts at conciliation with defendant failed, the EEOC issued Williams a Notice of Right to Sue letter. Around the same time Williams was fired, Howard complained to defendant of race-based compensation disparities. In the following month he filed race discrimination charges with the EEOC. The EEOC found "reasonable cause" that Howard's claims were true and issued a Notice of Right to Sue letter. Howard was terminated from his employment the following year and he subsequently amended his original charge to include charges of unlawful retaliation under Title VII.

No. 20-1351, *Williams, et al. v. Dearborn Motors 1, LLC*

Plaintiffs sought to represent a class of defendant's current and former employees who were required to sign an arbitration agreement as a condition of their employment or continued employment. In addition to the class-based discrimination claims, Williams raised individual claims for retaliation in violation of Title VII, the ADEA, and the ADA, based on his termination for refusing to sign the arbitration agreement. Howard also raised individual claims for retaliation in violation of Title VII based on his opposition to the arbitration agreement, race discrimination due to compensation disparities in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), and retaliation in violation of ELCRA based on his termination after having filed EEOC charges.

The arbitration agreement at issue in this case provides, in relevant part:

> Employee agrees that all claims or disputes between employee and the company . . . will be litigated individually; that he/she will not consolidate his/her claims with the claims of any other individual; that he/she will not seek class or collective action treatment for any claim that he/she may have; and that he/she will not participate in any class or collective action treatment against the company . . . . If at any time the employee is made a member or [sic] a class in any proceeding, he/she will "opt out" at the first opportunity, and should any third party pursue any claims on his/her behalf, the employee shall waive his/her rights to any such monetary recovery.

Defendant moved to dismiss the class claims and compel arbitration of Howard's individual claims. The district court granted the motion in May 2018, three days after the Supreme Court issued a decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), in which the Court upheld an arbitration agreement with a class waiver policy in an action asserting wage and overtime claims under the Fair Labor Standards Act ("FLSA"). *Id.* at 1632. Relying on *Epic*, the district court ruled that the class waiver in this case was valid and enforceable, dismissed the class claims, and ordered that Howard's remaining claims be sent to arbitration. Plaintiffs moved for reconsideration of the court's decision and the court reaffirmed its prior order.

-3-

The parties subsequently filed cross motions for judgment on the pleadings on Williams's individual retaliation claims. The court denied plaintiffs' motion and granted judgment on the pleadings in favor of defendant, reasoning that Williams failed to allege a prima facie retaliation claim because his belief that the class waiver term in the arbitration agreement was unlawful was not objectively reasonable based on substantial federal caselaw upholding class waivers in similar cases. The court observed that Williams's conduct moreover could not qualify as protected activity under Title VII, the ADA, or the ADEA, because his refusal to sign the arbitration agreement did not constitute opposition to any discriminatory act or policy.

Plaintiffs timely appealed from the district court orders dismissing their class-based discrimination claims and Williams's individual retaliation claims. Defendant-appellee is not represented by counsel and has not filed a brief in this appeal.

## II.

Plaintiffs make two arguments on appeal. First, they claim that dismissal of their class-based discrimination claims was improper because defendant's class waiver policy was unlawful under Title VII, the ADA, and the ADEA, which we refer to collectively as the Civil Rights Acts ("Acts"), because the policy limited their right to pursue certain claims or obtain certain types of relief. Second, they argue that Williams presented a prima facie case of retaliation on the theory that his opposition to the mandatory arbitration agreement constituted protected activity because he reasonably believed he was opposing a discriminatory policy. Neither argument warrants reversal.[1]

---

[1] Plaintiff Howard obtained a default judgment below on his individual retaliation claim based on his termination after filing the EEOC complaint. The district court awarded Howard monetary damages and that award has not been appealed.

No. 20-1351, *Williams, et al. v. Dearborn Motors 1, LLC*

Plaintiffs first contend that dismissal of their class claims was error because the class waiver policy constituted an "unlawful employment practice" under the Civil Rights Acts by limiting the employees "in any way" that would "deprive or tend to deprive" them of employment opportunities based on their protected status. *See* 42 U.S.C. § 2000e-2 (Title VII). *See also* 42 U.S.C. § 12112 (ADA); 29 U.S.C. § 623 (ADEA). We review the dismissal of the class claims de novo. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir. 2016).

Plaintiffs failed to state a cognizable claim to relief with respect to their class-based discrimination claims, because the claims are precluded by the Federal Arbitration Act's ("FAA") broad mandate in favor of upholding arbitration agreements. The FAA reflects Congress's intent to create a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Arbitration entails a matter of contract, and the Supreme Court has instructed that "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes and the rules under which arbitration will be conducted." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks and citations omitted). "That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command." *Id.* (internal quotation marks and citation omitted). In *Italian Colors*, the Court upheld a class action waiver policy as enforceable in the context of an antitrust action, observing that there was "[n]o contrary congressional command" requiring the Court to reject the class waiver. *Id.* at 233-39. *Italian Colors* recognized that class waiver policies are lawful under the FAA and enforceable, even with respect to claims that are commonly raised in class actions. *See id.* at 233. Consequently, for plaintiffs to prevail on their class claims, they must point to some

-5-

No. 20-1351, *Williams, et al. v. Dearborn Motors 1, LLC*

"contrary congressional command" showing that the Civil Rights Acts override the FAA's mandate authorizing class waivers. Plaintiffs did not do so here.

Plaintiffs' contention that the Civil Rights Acts render class waivers unenforceable is inconsistent with Supreme Court precedent directly addressing one of the statutes in question. The Court upheld a class action waiver in the context of an employment discrimination claim raised under the ADEA, despite the fact that the statute expressly permits collective actions. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991). In *Gilmer*, the Court held that the plaintiff had failed to carry his burden of showing "that Congress intended to preclude" individual arbitration of ADEA claims. *Id.* at 26-27. The Court reasoned that just because the ADEA permits collective actions "does not mean that individual attempts at conciliation were intended to be barred[,]" and observed that the EEOC could still bring actions "seeking class-wide and equitable relief." *Id.* at 32 (quoting *Nicholson v. CPC Int'l Inc.*, 877 F.2d 221, 241 (3rd Cir. 1989) (Becker, J., dissenting)). Plaintiffs offer no argument as to why the reasoning in *Gilmer* does not apply with equal force to claims under Title VII and the ADA. With no express statement barring the use of class waivers, such policies are enforceable under the FAA with respect to employment discrimination claims.

The Supreme Court's decision in *Epic* supports the above analysis, though *Epic* does not address arbitration of Civil Rights Act claims. 138 S. Ct. at 1619. Below, in response to defendant's motion to dismiss the class claims, plaintiffs at the outset relied heavily on our decision in *NLRB v. Alternative Entertainment, Inc.*, 858 F.3d 393 (6th Cir. 2017), which held that forcing individual arbitration of "all employment-related clams is not enforceable" because such procedures violate the National Labor Relations Act ("NLRA"). *Id.* at 408. However, the Supreme Court abrogated *Alternative Entertainment* in *Epic*, holding that "as a matter of law the answer is

-6-

clear. In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic*, 138 S. Ct. at 1619.

As the Court observed in *Epic*, the contention that another statute overrides the Arbitration Act and requires holding an otherwise valid arbitration agreement unlawful "faces a stout uphill climb." 138 S. Ct. at 1624. "In *Epic*, the Court told us that a federal statute does not displace the Arbitration Act unless it includes a 'clear and manifest' congressional intent to make individual arbitration agreements unenforceable." *Gaffers v. Kelley Servs., Inc.*, 900 F.3d 293, 295 (6th Cir. 2018) (quoting *Epic*, 138 S. Ct. at 1624). Congress can show a clear and manifest intent to make certain arbitration procedures unenforceable by expressly precluding the availability of those procedures in the text of the relevant statute, but a general right to pursue a class action does not evidence a clear and manifest intent to displace the Arbitration Act. *Epic*, 138 S. Ct. at 1624, 1626 (collecting statutes where Congress expressly limited the enforceability of arbitration agreements with respect to certain claims). Under this standard, the Court observed that there was no express provision within the NLRA overriding the right to contract for mandatory individual arbitration in the FAA, and therefore the NLRA did not foreclose the use of individualized arbitration proceedings. *Id.* at 1624–26. Again, plaintiffs here point to no provision in any of the Civil Rights Acts that overrides the FAA and expressly bars mandatory individual arbitration of employment discrimination claims.

To be sure, Justice Ginsburg in dissent read the scope of the majority opinion in *Epic* narrowly, stating:

> I do not read the Court's opinion to place in jeopardy discrimination complaints asserting disparate-impact and pattern-or-practice claims that call for proof on a group-wide basis, see Brief for NAACP Legal Defense & Educational Fund, Inc., et al. as *Amici Curiae* 19–25, which some courts have concluded cannot be

> maintained by solo complainants, see, *e.g.*, *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 147 (C.A.2 2012) (pattern-or-practice method of proving race discrimination is unavailable in non-class actions). It would be grossly exorbitant to read the FAA to devastate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and other laws enacted to eliminate, root and branch, class-based employment discrimination, see *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). With fidelity to the Legislature's will, the Court could hardly hold otherwise.

*Epic*, 138 S. Ct. at 1648 (Ginsburg, J., dissenting). It is true that the majority in *Epic* did not address the validity of class waivers in the employment discrimination context. But, to the extent that the issue in *Epic* is analogous to the issues here, the logic of the majority opinion applies. The majority broadly stated that although the policy questions are debatable, the FAA clearly permits parties to agree to individualized arbitration proceedings of all claims unless there is an express statutory command to the contrary. *Id.* at 1619 (maj. op. of Gorsuch, J.). Additionally, the Court's precedent in *Gilmer* and *Italian Colors*, which are not discussed in the relevant portion of Justice Ginsburg's dissent, coupled with our own caselaw upholding class waivers in the employment setting, guide our decision to affirm the district court on this issue.

Moreover, the class claims in this case are barred under the FAA because they challenge the arbitration agreement *solely* on the basis that it required individual arbitration. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Supreme Court invalidated a California law requiring that class procedure be available for all arbitration because the law "interfere[d] with fundamental attributes of arbitration." *Id.* at 344. Plaintiffs' claims have the same flaw, as "one of arbitration's fundamental attributes is its historically individualized nature." *Gaffers*, 900 F.3d at 297 (citing *Epic*, 138 S. Ct. at 1622-23); *see also AT&T Mobility*, 563 U.S. at 347-48. Thus, the class waiver is enforceable, and plaintiffs' class claims challenging the individualized nature of the agreement's procedures would amount to impermissible interference with one of arbitration's fundamental attributes. *Cf. Italian Colors*, 570 U.S. at 238.

Furthermore, plaintiffs' claims fail because they have not shown that the class waiver actually violates any of the Civil Rights Acts. Plaintiffs present two arguments in attempting to show that the class waiver policy constitutes an unlawful employment practice under the Civil Rights Acts. First, plaintiffs assert that the policy foreclosed the employees' ability to litigate discrimination claims under a pattern-or-practice method of proving such claims. Second, plaintiffs assert that the policy limited the scope of possible relief by foreclosing their ability to obtain company-wide injunctive relief to eliminate an employer's discriminatory practices. Both of these arguments are without merit.

Plaintiffs' argument that the class waiver violated their legal rights by foreclosing their ability to pursue pattern-or-practice discrimination claims is unfounded. There is no substantive statutory right to raise an employment discrimination claim under a pattern-or-practice theory in a judicial forum. The pattern-or-practice theory is simply a method of establishing a prima facie employment discrimination claim. Although individual plaintiffs cannot use pattern-or-practice evidence alone to establish a prima facie case for employment discrimination, they may still rely on such evidence to support their individual claims, whether it be in court or at arbitration.

The Supreme Court set forth the test for establishing a prima facie case for employment discrimination in a "private, non-class action" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). Under the *McDonnell Douglas* framework, a plaintiff must show that he is a member of a protected group, he was qualified for and sought an available employment position, he did not obtain that position, and the employer continued to seek applicants for that position with qualifications similar to those of the plaintiff. *Id.* at 802. But in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), the Supreme Court set forth the pattern-or-practice method as an alternative means of establishing a prima facie case for an employment

-9-

discrimination claim. *Id.* at 358. Under the pattern-or-practice method, a prima facie case for employment discrimination may be established by demonstrating "that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *Id.* at 360. "The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the [plaintiffs'] proof is either inaccurate or insignificant." *Id.* The pattern-or-practice method is available only in class actions or suits by the government. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). This is because "a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case." *Id.* The pattern-or-practice method is necessary for class actions because proof of "isolated or sporadic discriminatory acts by the employer" or evidence of discriminatory treatment of an individual representative plaintiff cannot support an "across-the-board" attack on behalf of an entire class. *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 876-77 (1984).

That the class waiver in this case would foreclose plaintiffs' ability to raise pattern-or-practice claims in a class action does not mean that plaintiffs are deprived of any substantive statutory right. The pattern-or-practice framework is not a separate cause of action, but simply "one methodology of evidentiary proof" that may be used to substantiate an inference of discriminatory conduct. *Serrano v. Cintas Corp.*, 699 F.3d 884, 898 (6th Cir. 2012). This framework "is not an inherently easier standard of proof; it is simply a different standard of proof." *Id.* at 896. There is no statutory guarantee in the Civil Rights Acts providing pattern-or-practice claims as private rights of action. In fact, Title VII provides that the Attorney General may bring a civil action if there is "reasonable cause" to believe a discriminatory "pattern or practice" exists, but Title VII does not expressly make such claims available to private plaintiffs. *See* 42 U.S.C.

No. 20-1351, *Williams, et al. v. Dearborn Motors 1, LLC*

§ 2000e-6. Our sister circuits have likewise recognized that the pattern-or-practice framework does not establish any independent substantive right. *See Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 183 (3rd Cir. 2009). In *Parisi*, the Second Circuit upheld a class waiver policy with respect to a Title VII employment discrimination claim, rejecting the same arguments the plaintiffs raise here. Specifically, the court stated "Parisi contends . . . that individual arbitration would preclude her from vindicating her right to bring a substantive 'pattern-or-practice' claim under Title VII. But such a right does not exist. . . . '[P]attern-or-practice' simply refers to a method of proof and does not constitute a 'freestanding cause of action.'" *Parisi*, 710 F.3d at 487 (citation omitted). Nor is there any substantive right to pursue a class action to raise employment discrimination claims. Although Federal Rule of Civil Procedure 23 creates a mechanism for pursuing class actions in federal court, "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (quoting 28 U.S.C. § 2072(b)). "[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims." *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 332 (1980). Accordingly, there is no substantive entitlement to bring a pattern-or-practice claim of discrimination in a class action.

Even without pursuing a class action, plaintiffs could still present pattern-or-practice evidence in an individual proceeding, as it "may be relevant to proving an otherwise-viable individual claim" for employment discrimination. *Bacon*, 370 F.3d at 575; *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 n.3 (4th Cir. 2004). For example, evidence showing that an employer has a practice of treating members of a protected class in a discriminatory fashion can still be presented at arbitration. To be sure, such evidence may be presented in federal court as well, but it simply

-11-

is not enough by itself to establish a prima facie case of employment discrimination for an individual plaintiff. *See Bacon*, 370 F.3d at 575. "[A] plaintiff may use pattern evidence of disparate treatment . . . , although, standing alone, it is insufficient evidence to withstand summary judgment." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 782 (7th Cir. 2007). Consequently, plaintiffs may present pattern-or-practice evidence to support an employment discrimination claim, but they must still satisfy the *McDonnell Douglas* framework in order to prevail. *See Bacon*, 370 F.3d at 575.

Furthermore, plaintiffs' argument that the class waiver constitutes an unlawful employment practice because it deprives them of the ability to obtain company-wide injunctive relief is also unavailing. The Supreme Court observed in *Gilmer* that "arbitrators do have the power to fashion equitable relief." 500 U.S. at 32. Arbitrators can order wrongfully terminated employees reinstated and have the authority to issue cease and desist orders as part of an award. *Totes Isotoner Corp. v. Int'l Chem. Workers*, 532 F.3d 405, 410 (6th Cir. 2008). In any event, even if the arbitrator cannot award the exact injunctive remedy plaintiffs desire, the arbitration agreement with its class waiver policy "will not preclude the EEOC from bringing actions seeking class-wide and equitable relief." *Gilmer*, 500 U.S. at 32. Moreover, the pattern-or-practice method of proof would remain available in suits by the government, so the government could seek the injunctive relief itself. Thus, the class waiver is valid and enforceable under the FAA, and dismissal of the plaintiffs' class claims was proper.

A review of the statutes at issue in this case underscores this conclusion, because none of the civil rights laws that plaintiffs rely on supports the notion that a class waiver constitutes an unlawful employment practice, which plaintiffs assert is the basis for the class-based discrimination claims in the complaint. For example, Title VII defines "unlawful employment

practices" to include hiring or job classification decisions based on an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Similarly, the ADA prohibits making hiring, classification, advancement, and compensation decisions that adversely affect an employee because of a disability. 42 U.S.C. § 12112(a). Lastly, the ADEA prohibits certain "[e]mployer practices" such as failing to hire an individual, altering their job classification, or reducing their wage rate because of that individual's age. 29 U.S.C. § 623(a). In an analogous action under these same statutes, the Eleventh Circuit rejected the argument plaintiffs present here, reasoning that "to extrapolate from these lists [of what constitutes an unlawful employment practice] the premise that the action of an employer requiring employees to arbitrate employment disputes is an 'unlawful' employment practice would require an intellectual dishonesty in which this court will not engage." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1316 (11th Cir. 2002). Indeed, there is nothing in these statutes that would suggest that the class waiver in this case is an unlawful employment practice, particularly where there is no allegation that the requirement to sign the arbitration agreement was applied in a way that was discriminatory toward a certain protected group. Thus, plaintiffs have not shown that the class waiver policy is an "unlawful employment practice" under Title VII, the ADA, or the ADEA, and have failed to state a cognizable claim to relief.

## III.

Williams's retaliation claims arising from his refusal to sign the arbitration agreement also fail, and judgment in favor of the defendant was also proper. Williams failed to establish a prima facie case for retaliation under any of the three Civil Rights Acts, because his refusal to sign the arbitration agreement did not constitute a protected activity. Williams's opposition to the class waiver did not involve an employment practice that was discriminatory on one of the bases protected by the Civil Rights Acts. To establish retaliation, a plaintiff must engage in a protected

activity. *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (Title VII); *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (ADA); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (ADEA). Under Title VII, an employee engages in protected activity by "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The ADA and ADEA contain similar provisions prohibiting retaliation. *See* 42 U.S.C. § 12203(a); 29 U.S.C. § 623(d). However, as the discussion above demonstrates, the class waiver is not an unlawful employment practice under any of the Civil Rights Acts. Moreover, protected activity must "involve allegations of discriminatory employment practices," *Fox*, 510 F.3d at 592 n.4, and Williams's conduct here was completely separate from any substantive allegations of employment discrimination. Williams's opposition to the class waiver was based on his belief that it violated the procedural requirements under the Civil Rights Acts by depriving him of a method of litigation and type of remedy. The refusal to sign did not constitute protected activity because it was not based on a reasonable belief that he was opposing allegedly "discriminatory acts." *Cf. Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000). The policy language is neutral on its face with respect to the protected categories. The complaint presents no allegations that the requirement to sign the agreement was applied in a discriminatory manner toward a certain class of individuals. For example, if only employees who are members of a single race were required to sign the class waiver, or only employees with disabilities, then Williams could perhaps show that his opposition was based on a discriminatory practice. But the record is devoid of any allegation that the arbitration requirement was imposed in a discriminatory manner. Thus, Williams's argument that he opposed a "discriminatory policy" is without merit. Nor did his refusal to sign qualify as a protest of any actual or suspected discriminatory policy. Accordingly, Williams's refusal to sign the arbitration agreement was not a protected activity in

No. 20-1351, *Williams, et al. v. Dearborn Motors 1, LLC*

opposition to a discriminatory employment act or practice, and he failed to establish a prima facie case for retaliation under Title VII, the ADA, or the ADEA.[2]

It is true that an employer may not hide behind an arbitration agreement to "bypass his or her employees' statutory right not to be discriminated against." *McCall v. Chesapeake & Ohio Ry. Co.*, 844 F.2d 294, 300 (6th Cir. 1988); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977). But that is not the case here. This is not a situation where the employer has conditioned employment on an employee's agreement to give up the statutory right to be free from discrimination. *See Cole v. Burns Intern. Sec. Svcs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974)). Such a scheme would clearly be unlawful, because "there can be no prospective waiver of an employee's rights under Title VII," as "Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices . . . waiver of these rights would defeat the paramount congressional purpose behind Title VII." *Gardner-Denver*, 415 U.S. at 51; *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009); *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 584 (6th Cir. 1995). Consistent with this rule, the ADEA itself provides that when an individual "waive[s] rights or claims that may arise after the date the waiver is executed," that waiver may not be considered knowing and voluntary. 29 U.S.C. § 626(f)(1)(C).

Our analysis would be markedly different if Williams's opposition centered on an attempt to make him prospectively waive his statutory rights under the Civil Rights Acts. For example, we have held that arbitration agreements requiring individuals to waive their right to file a charge with the EEOC in the future are void as being against public policy. *See EEOC v. Frank's Nursery*

---

[2] As in our decision in *Fox,* given that Williams's refusal to sign the arbitration agreement did not constitute protected activity because it did not involve opposition to any allegedly discriminatory employment practices, we need not consider whether his belief that the agreement was unlawful was sufficiently reasonable to warrant protection under the Civil Rights Acts. 510 F.3d at 592 n.4.

-15-

No. 20-1351, *Williams, et al. v. Dearborn Motors 1, LLC*

*& Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999). But under the arbitration agreement, Williams still retained his full substantive rights under the Civil Rights Acts, including the right to file an EEOC charge, and could vindicate his civil rights at arbitration consistent with the congressional mandates of the FAA. Williams failed to identify an objectively reasonable basis for his belief that the class waiver was discriminatory. He may, at most, have had a reasonable belief that the class waiver policy was void as being against public policy. But that is not enough to assert a retaliation claim under the Civil Rights Acts, which regulate discriminatory acts and practices. Indeed, requiring that an employee sign a contract as a condition of employment, even if it turns out that the contract contains a provision that is void or illegal, does not mean that the employer is guilty of violating the Civil Rights Acts. *See Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 837 (D.C. Cir. 2001). Plaintiffs' general assertions that the class waiver is an unlawful employment practice does not implicate the core question of whether the challenged practice violated the ban on discrimination against a protected group pursuant to the Civil Rights Acts. Consequently, Williams's challenge to the arbitration agreement under the theory of retaliation fails here.

For the foregoing reasons, we affirm the dismissal of plaintiffs' class claims and the grant of judgment on the pleadings in favor of defendant on Williams's individual retaliation claims.